# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| NATIONS FUND, I, LLC, | § | |
|    *Plaintiff*, | § | |
| | § | Civil Action No. 4:19-CV-00095 |
| v. | § | Judge Mazzant |
| | § | |
| ENERCORP CRANE & ENERGY | § | |
| SERVICES, LLC, TRIPLE 7 INDUSTRIES, | § | |
| LLC, ENERCORP SERVICES LLC, AND | § | |
| ZACHRY WEIR, | § | |
|    *Defendants*, | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Motion to Set Aside Clerk's Entry of Default and for Leave to File Answer to Complaint (Dkt. #25; Dkt. #26).

After reviewing the record, the Court finds that Defendants' Motion to Set Aside Clerk's Entry of Default and for Leave to File Answer to Complaint (Dkt. #25; Dkt. #26) should be **GRANTED**. Accordingly, Plaintiff's Motions for Default Judgment as to each Defendant (Dkt. #19; Dkt. #20; Dkt. #21; Dkt. #22) and its Motion for Oral Hearing (Dkt. #32) are **DENIED as moot** and the Clerk's entry of default as to each Defendant (Dkt. #15; Dkt. #16; Dkt. #17; Dkt. #18) is **VACATED**.

### BACKGROUND

**I.    Factual Summary**

Plaintiff Nations Fund I, LLC ("Plaintiff") leased equipment to Defendant Enercorp Crane & Energy Services, LLC ("Enercorp") under a Master Lease Agreement ("the Agreement") on February 6, 2015. Under the Agreement, Defendant Triple 7 Industries ("Triple 7") is a co-lessee. That same day, Defendant Enercorp Services LLC ("Enercorp Services") and Defendant Zachry

Weir executed lease guaranty agreements with Plaintiff, in which they agreed to act as corporate and personal guarantor, respectively, in favor of Plaintiff. Also that same day, Enercorp and Triple 7 entered into equipment schedules pursuant to the Agreement.

Plaintiff allegedly has not received payments on the leased equipment from Enercorp and Triple 7 since October 17, 2018. As a result, on October 31, 2018, Plaintiff sent a Notice of Default and Demand Letter to Enercorp and Triple 7, advising them that they were in default, terminating their right to possess the leased equipment, and demanding that they remit the entire default balance and return the equipment to Plaintiff.

On November 9, 2018, Plaintiff filed a lawsuit against Enercorp, Triple 7, Enercorp Services, and Zachry Weir (collectively, "Defendants") in Connecticut state court. In response, Enercorp claims it began negotiating with Plaintiff regarding the Agreement and alleged delinquencies under the Agreement as claimed by Plaintiff in the Connecticut lawsuit. Enercorp allegedly agreed with Plaintiff, on behalf of Defendants, to release the leased equipment to Plaintiff for sale at an auction. On December 12, 2018, pursuant to that agreement, an auctioneer sold the majority of the leased equipment and the proceeds went to Plaintiff. Enercorp and Triple 7 retained the remaining equipment. At that time, it was at least Enercorp's understanding that the release and sale of the leased equipment would operate as full and final payment under the Agreement and terminate the Agreement. Plaintiff disagrees. It claims that there was a difference between the equipment's book value and the amount it received in proceeds from the auction. And Plaintiff further claims that, though Defendants agreed to remit a payment toward that difference, it did not agree that that payment would operate as full and final payment of Defendants' obligations under the Agreement. On February 3, 2019, three days before this action was filed, Plaintiffs sent

Enercorp and Triple 7 a second Notice of Default and Demand Letter terminating their right to possess the equipment retained after the auction and demanding its return.

Plaintiff asserts claims against Defendants for breach of contract. Plaintiff claims that Enercorp and Triple 7 breached the terms of the Agreement and defaulted when they stopped making payments on the leased equipment on October 17, 2018. Moreover, Plaintiff claims that Enercorp Services and Zachry Weir materially breached their respective guarantee agreements by failing to cure Enercorp and Triple 7's default. Plaintiff requests, among other things, contract damages of not less than $1,977,577.91—the $1,112,941.57 in sale proceeds from the auction, plus rent fees, late fees, and any deficiency amounts from the equipment's sale. In addition, Plaintiff files an application for writ of sequestration, claiming that it is entitled to possession of the equipment retained by Enercorp and Triple 7 after the December 12, 2018 auction.

## II.    Procedural History

On February 6, 2019, Plaintiff filed a complaint and application for writ of sequestration against Defendants (Dkt. #1). Summons returned executed by each Defendant, indicating that service of process was made on each on February 13, 2019 (Dkt. #6; Dkt. #7; Dkt. #8; Dkt. #9).

Defendants did not appear or otherwise indicate an intent to participate in the litigation by their March 6, 2019 deadline to answer. On March 7, 2019, Plaintiff moved for Clerk's entry of default judgment against each Defendant (Dkt. #11; Dkt. #12; Dkt. #13; Dkt. #14). On March 8, 2019, the Clerk entered default against each Defendant (Dkt. #15; Dkt. #16; Dkt. #17; Dkt. #18). On March 20, 2019, Plaintiff moved for default judgment against each Defendant (Dkt. #19; Dkt. #20; Dkt. #21; Dkt. #22).

On March 26, 2019, Defendants filed a notice of attorney appearance (Dkt. #23). On April 12, 2019, Defendants moved to set aside Clerk's entry of default and for leave to answer Plaintiff's complaint ((Dkt. #25; Dkt. #26). That same day, Defendants filed an answer (Dkt. #27).

On April 25, 2019, Plaintiff filed a response to Defendants' motion to set aside Clerk's entry of default (Dkt. #28). On May 3, 2019, Defendants filed a reply (Dkt. #31). On August 15, 2019, Plaintiff moved for an oral hearing on its March 20, 2019 motions for default judgment (Dkt. #32).

**LEGAL STANDARD**

Rule 55 of the Federal Rules of Civil Procedure sets forth certain conditions under which default may be entered against a party, as well as the procedure to seek the entry of default judgment. FED. R. CIV. P. 55. The Fifth Circuit requires a three-step process for securing a default judgment. *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). First, a default occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by Rule 12 of the Federal Rules of Civil Procedure. FED. R. CIV. P. 55(a); *New York Life Ins.*, 84 F.3d at 141. Next, an entry of default may be entered by the clerk when the default is established by affidavit or otherwise. FED. R. CIV. P. 55(a); *New York Life Ins.*, 84 F.3d at 141. Third, a plaintiff may then apply to the clerk or the court for a default judgment after an entry of default. Fed. R. Civ. P. 55(b); *New York Life Ins.*, 84 F.3d at 141.

A court may set aside an entry of default "for good cause shown." FED. R. CIV. P. 55(c); 60(b). "[T]he requirement of 'good cause' . . . ha[s] generally been interpreted liberally." *Amberg v. Fed. Deposit Ins. Corp.*, 934 F.2d 681, 685 (5th Cir. 1991). Courts will look at the following factors to determine whether there is good cause to set aside a default: (1) whether the failure to act was willful; (2) whether setting the default aside would prejudice the adversary; and

(3) whether a meritorious claim has been presented. *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000). Other factors, such as whether the party acted expeditiously to correct the default, may also be considered. *Effjohn Intern. Cruise Holdings, Inc. v. A&L Sales*, 346 F.3d 552, 563 (5th Cir. 2003) (citing *Dierschke v. O'Cheskey (In re Dierschke)*, 975 F.2d 181, 184 (5th Cir. 1992)). These factors are not exclusive but are to be regarded simply as a means to identify good cause. *Id.* However, willful failure alone may, in some circumstances, constitute sufficient cause for the court to deny a motion to set aside. *Dierschke*, 975 F.2d at 184–85.

Generally, the Fifth Circuit has adopted a policy in favor of resolving cases on the merits and against the use of default judgment. *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999). "This policy, however, is counterbalanced by considerations of social goals, justice and expediency, a weighing process [that] lies largely within the domain of the judge's discretion." *Id.* (internal quotations and citations omitted).

## ANALYSIS

Defendants now move to set aside the Clerk's entry of default, and Plaintiff requests that its motion for default judgment be granted. The Court finds that, even if technically proper, the Clerk's entry of default should be set aside.

### I. Willfulness

In considering whether good cause exists to set aside a default judgement or entry of default, a finding of willfulness ends the inquiry. *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000). Absent intervening equities, the Court resolves any doubts "in favor of the movant to the end of securing a trial upon the merits." *Id.*

Defendants advance two arguments for why their default was not willful. First, they argue that failure to timely answer was not willful because their understanding was that this action was

a continuation of the previously filed and still pending Connecticut action involving the exact same facts, claims, and legal issues. Plaintiff responds by maintaining that Defendants were on notice of the Texas action filed against them because Plaintiff informed Defendants of its intent to move the proceedings from Connecticut to Texas.

Next, Defendants argue that the lawsuit pending against them was ineffective due to an alleged agreement with Plaintiff to auction the leased equipment and use the proceeds as a final cancellation payment to Plaintiff. That cancellation payment, Defendants argue, would have cancelled the Agreement and any of Defendants' obligations thereunder. Plaintiff argues that Defendants knew it would not accept the proceeds as full and final payment and would instead sue to collect amounts owed.

The Fifth Circuit's decision in *In re Dierschke* is relevant to the parties' arguments. There, the party in default argued that his failure to answer was unintentional, explaining that "he was involved in a second suit when served and, as a result, he did not understand that he had been served with a summons in this case." *Dierschke*, 975 F.2d 181, 184 (5th Cir. 1992). The Fifth Circuit declined to overturn the bankruptcy court's finding that Mr. Dierschke's conduct was willful because he "chose to make a decision that he hadn't been served when, in fact, he had." *Id.* Importantly, however, what motivated the Fifth Circuit to ultimately reach this conclusion was the bankruptcy court's judgment that Mr. Dierschke "chose to play games with [the] court." *Id.* at 183.

Indeed, whether the party in default's conduct is willful or intentional turns in large part on whether it appears he or she chose to play games with the court by failing to timely participate in the litigation. *See Lacy*, 227 F.3d 290, 292 (5th Cir. 2000) (holding that there was no willfulness

because defendant's failure to act on the litigation was not a deliberate choice to "'play games' with the district court") (quoting *Dierschke*, 975 F.2d at 183).

Using this as the guiding principle, the Court is not persuaded that Defendants here made the deliberate choice to play games with the Court. To be sure, under *Dierschke*, Defendants' confusion about the status of the Connecticut and Texas legal proceedings is not alone enough to preclude a finding of willfulness. But the Court evaluates the circumstances in their entirety. Considering Defendants' alleged misunderstanding of the legal proceedings *in conjunction with* their belief that they had formed an agreement with Plaintiff that would invalidate any legal claim against them pertaining to the leased equipment, it does not appear Defendants were attempting to play games with the Court. The Court reaches this conclusion in light of the "seriousness of a default judgment" and after resolving all doubts in favor of Defendants. *See Lacy*, 227 F.3d at 292 (quoting *Mason & Hanger-Silas Mason Co. v. Metal Trades Council*, 726 F.2d 166, 168 (5th Cir. 1984)).

The Court recognizes that Defendants are not free of fault here: they did fail to timely answer under the Federal Rules of Civil Procedure. It does, however, find that Defendants' conduct "does not rise to the level of culpability or willfulness that should prevent a court from setting aside the default judgment." *Rogers v. Hartford Life & Acc. Ins. Co.*, 167 F.3d 933, 943 (5th Cir. 1999). Indeed, the Court considers Defendants' fault in failing to timely answer in view of the broader policy that default judgments are "generally disfavored in the law" and thus "should not be granted on the claim, without more, that the defendant had failed to meet a procedural time requirement." *Mason & Hanger-Silas Mason*, 726 F.2d at 168.

Therefore, on balance and resolving any doubts in favor of Defendants, the Court in its discretion finds that Defendants' failure to timely answer was not willful.

7

## II. Prejudice

There is no prejudice when "the setting aside of the default [does] no harm to plaintiff except to require it to prove its case." *Lacy*, 227 F.3d at 293 (quoting *Gen. Tel. Corp. v. Gen. Tel. Answering Serv.*, 277 F.2d 919, 921 (5th Cir. 1960)). Mere delay is not enough; rather, the party requesting a default judgment must show that "the delay will result in the loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion." *Id.* (quoting *Berthelsen v. Kane*, 907 F.2d 617, 621 (6th Cir. 1990)).

Defendants argue that Plaintiff will not be prejudiced by setting aside the Clerk's entry of default because it will not result in lost evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion. Plaintiff argues that it has incurred substantial costs in obtaining the Clerk's entry of default and that setting aside the entry of default would reward Defendants' untimeliness.

The Court agrees with Defendants. Plaintiff's argument focuses on the additional expenses it would incur and the time it would have to spend if the Court set aside the Clerk's entry of default. But Plaintiff does not aver that it would result in any evidence being lost, create greater difficulties in conducting discovery, or create opportunities for fraud and collusion. Thus, additional time spent and expenses incurred, without more, is insufficient to demonstrate prejudice.

Accordingly, the Court finds that setting aside the Clerk's entry of default would not prejudice Plaintiff.

## III. Meritorious Defense

In deciding whether a meritorious defense exists, the Court considers "whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *Scott v. Carpanzano*, 556 F. App'x 288, 296 (5th Cir. 2014). The party in default

need not show a likelihood of success on the merits. *Owens-Illinois, Inc v. T & N Ltd.*, 191 F.R.D. 522, 526 (E.D. Tex. 2000). Rather, it need only show that the "evidence submitted, if proven at trial, would constitute a defense." *Id.*

Here, Defendants have presented a number of defenses. Defendants deny that they owe Plaintiff, contending that they agreed to a forbearance and cancellation of the Agreement upon the sale of the leased equipment. Further, Defendants argue that Plaintiff has misinterpreted certain provisions of the Agreement; that Plaintiff failed to satisfy certain conditions precedent; that certain provisions were invalidly executed; and that certain provisions are inapplicable and preclude recovery by Plaintiff.

Without taking a position on their substance, it appears to the Court that at least some of Defendants' asserted defenses would, if proven true, create a different outcome than the result achieved by default. The requirement that Defendants present a meritorious defense is "only intended to ensure that the Court's order vacating the judgment is not an exercise in futility." *Owens-Illinois*, 191 F.R.D. at 526. Here, the Court is satisfied that Defendants have met their burden of showing that the allegations submitted, if proven at trial, would constitute a defense and that allowing the case to proceed would not be futile.

In sum, the record here indicates that Defendants' default was not willful, Plaintiff will not be prejudiced, and Defendants have a meritorious defense. Considering these factors, the Court in its discretion finds that the Clerk's entry of default should be vacated.

## CONCLUSION

It is hereby **ORDERED** that Defendants' Motion to Set Aside Clerk's Entry of Default and for Leave to File Answer to Complaint (Dkt. #25; Dkt. #26) is **GRANTED**. The Clerk's Entry of Default as to each Defendant (Dkt. #15; Dkt. #16; Dkt. #17; Dkt. #18) is hereby **VACATED**.

It is further **ORDERED** that Plaintiff's Motions for Default Judgment as to each Defendant (Dkt. #19; Dkt. #20; Dkt. #21; Dkt. #22) and its Motion for Oral Hearing (Dkt. #32) are **DENIED as moot.**

**IT IS SO ORDERED**.

**SIGNED this 1st day of October, 2019.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE